```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
UNITED TORAH  EDUCATION            )
& SCHOLARSHIP FUND, INC.,          )
                                   )
          Plaintiff,               )    13 CIV 3619 (RJS)
                                   )
     -against-                     )
                                   )    DECLARATION OF
SOLOMON CAPITAL LLC, et al         )    MARK BEYCHOCK
                                   )
                                   )
          Defendants.              )
--------------------------------------------------------X
```

I, **MARK BEYCHOCK**, hereby declare, pursuant to 28 U.S.C. 1746, under penalties of perjury, as follows:

1. I am the principal of MBA Holdings Inc. ("MBA"), a financial consulting and restructuring company doing business in Los Angeles, California. Except as other stated, I am personally familiar with the facts set forth herein, and would so testify if called as a witness at trial.

2. I first met Solomon Sharbat ("Sharbat") in New York City in about fall 2008 and he attended my wedding in March 2011 In or about April 2012, I began working with Sharbat while he was living in Israel. Sharbat agreed to pay MBA a consulting fee of $15,000 per month in return for working with him on exploring the vitality of various American start-up projects as investment vehicles for his companies, Solomon Capital LLC and Solomon Capital 401K Trust ("Sharbat & Cos.").

3. For several months, MBA also provided Sharbat & Cos. with substantial help in researching, resolving various problems and advising Sharbat & Cos., primarily regarding their investment in a company called Immunovative Therapies, Ltd. ("Immunovative") (its stock called IMUN) and/or its American licensee, Novo Energies Corporation ("Novo"), a Florida corporation whose principal Seth Shaw, lived and worked in New York City, as reflected in **Exhs. I-M** hereto. MBA also did substantial consulting work and helped Sharbat find a securities lawyer who ultimately brought to a conclusion the matter of *Finra vs Sharbat* which arose from his involvement in the PerfGo Green reverse merger and stock sale. *See* **Exhs. F-H** hereto.

4. In June 2012, MBA entered into a consulting contract with Genesis Biopharma Inc., a West Los Angeles cancer treatment developer. *See* **Exh. A** hereto. When Sharbat learned of the MBA-Genesis contract, he immediately sought to get involved in that company with MBA and become a 50-50 joint venture in the Genesis deal. *See* **Exhs. B, D** hereto. Sharbat wanted to develop and expand the working relationship with MBA and Genesis and offered to have its CEO, Anthony Cataldo, fly to Israel, expenses paid, to further develop relationships during the month of August. The relationship with MBA turned sour in or about January 2013 when it became clear that Sharbat would not meet his agreed upon payments for a 50% interest or overdue monthly consulting fees due to MBA. During the months of January to May 2013, Sharbat then followed suit with threats, fights and recriminations.

**A.     The Authenticity of Evidentiary Documents Annexed as Exhibits to this Declaration**

5. As principal of MBA and as a consultant to Sharbat & Cos., I have first-hand knowledge of any transactions or e-mail communications in which MBA participated, directly or through e-mail communications, on MBA's behalf or on behalf of Sharbat & Cos. All such

contemporaneous records, agreements and e-mail communications annexed as Exhibits hereto are true and accurate copies of such documents and records made at or about the time of the underlying events. Additionally, these documents are true and accurate copies of records kept by MBA in the ordinary course of business.

6. In addition, as custodian of MBA's records and at all relevant times, I also retained copies of all agreements, letters, records of transactions, corporate records, financial records, e-mails and other communications related to the Genesis, Immunovative/Novo or other transactions described below, which were given to MBA by Sharbat for photocopying. These were retained as part of the records and files of MBA maintained by me in the ordinary course of business, on or near the time of the underlying events or occurrences, or as prior history for analysis and usage in performing MBA's consulting assignment to Sharbat & Cos.

**B. What Sharbat Told Me about His Intent To Stay In Israel**

7. Because of MBA's close consulting arrangement with Sharbat & Cos., particularly with respect to MBA's involvement in the FINRA investigation of Sharbat's involvement in any illegal stock sales arising from the PerfGo Green reverse merger, and because of his desire to become a 50-50 joint venture in the MBA-Genesis contract, Sharbat and I had numerous frank conversations about why he had suddenly moved from New York to Israel, and how long he intended to stay there.

8. First, various potential investors in, and principals of, Genesis needed to meet with Sharbat, and had to meet with him only in Israel. Sharbat made it clear to me he could not, and would not, step foot in the United States because he feared arrest upon returning to the United States, either as a target or as a material witness, in connection with his involvement in the Sponge Tech stock scandal that had erupted in late 2009-early 2010. Sharbat also expressed

some lesser fear of the ongoing FINRA investigation of his involvement in the PerfGo Green reverse merger in mid-2008, and possible SEC interest overlapping PerfGo Green and Sponge Tech.

9. Second, Sharbat made it clear to me many times that he hated living in Israel, especially with his parents in a small apartment, and that he absolutely loved New York, which, in his view, was far more suited to his lifestyle. On more than one occasion, Sharbat lamented that he could not wait to come back home to New York. Sharbat also repeatedly stated that he planned to return to New York as soon as several SEC securities lawyers advised him that was safe to do so, after all pending investigations of the PerfGo Green (*see* **Exh. F-H** hereto) and Sponge Tech stock trading had been closed. He estimated that this would take about five years.

10. In addition, during the entire time I spend with Sharbat in Israel, I observed that he did not have a car and that he never drove. Instead, he had a full time driver on call whom he paid to drive him around wherever he wanted go.

### C. Sharbat and the Genesis-MBA Consulting Arrangement

11. There is no question that neither MBA nor Genesis have anything to do with Israel. The prospective capital sources for Genesis suggested by Sharbat to MBA verbally and in his e-mail to me dated July 17, 2013 (*see* **Exh. B** hereto) are predominately New York sources. On October 2, 2012, I authorized Genesis to issue 50% of stock due to MBA to Solomon Capital 401K Trust (at Sharbat's request), in exchange for an agreed upon payment he never made. I was told by Sharbat that Solomon Capital 401K Trust was organized in New York long before he left to Israel and that he is its trustee (*see* **Exh. C** hereto). As late as Jan 30, 2013, Sharbat sought many more shares which he wanted in the name of Solomon Capital 401K Trust (*see* **Exh. E** hereto).

12. Finally, on November 19, 2011, Sharbat sent me a proposed "Non-Disclosure, Non Circumvention and Fee Agreement" reflecting what he claimed was his share of the Genesis deal, although it was totally at variance with what we had discussed. As he had no lawyer, it appears that he drafted it by himself (*see* **Exh. D** hereto). In paragraph "Fifth" a *three year term* is proposed for the Agreement and provides that "any controversy arising out of any part of this provision or breach thereof….shall be settled in arbitration in accordance with the rules of the STATE OF NEW YORK or Israel..whichever Solomon choses." *See* also same provision in paragraph "FIRST" with the addition of "up to Solomon Capital to decide."

13. There is no way one can read reasonably read these clauses without reaching the conclusion that Sharbat is clearly planning to return to New York, as he has stated to me many times, and the sole question is simply when a controversy might arise between us within the next three years and where he would be at the time: Israel or New York, depending on the date.

**D**. **Sharbat and the Novo Energies Corp./Immunovative Deal**

14. As **Exhibit I** hereto indicates, Solomon Capital 401 K Trust was issued 500,000 shares of common stock in Novo Energies, a Florida corp. operated by Seth Shaw, an old acquaintance of Sharbat, who at the time lived and ran his business out of New York. The Novo offering memorandum annexed as part of Exhibit I explains the relationship between Novo, as licensee, and Immunovative, an Israeli cancer treatment developer. Also part of **Exh. I** is the subscription agreement dated October 24, 2011 for such stock and, on the last page, a wire transfer of $25,000.00 from Bank Leumi in Israel by Solomon Capital LLC through Sharbat. The address for Solomon Capital LLC is listed as "750 Lexington Ave., New York, NY 10022." The mailing address for Sharbat is listed one pager earlier as his Gush Halav 10 address in Tel Aviv, Israel. A check of the online entity database maintained by the New York Secretary of State

indicates Solomon Capital LLC is presently. an active, fully registered New York limited liability company

15. On December 31, 2011, Solomon Partners Inc. entered into a consulting agreement with Novo (**Exh. J**). Although the entity database of the New York Secretary of State shows that Solomon Partners is presently an active New York corporation, registered with the New York Secretary of State, its address is given as Sharbat's Tel Aviv address. I can accurately identify the handwriting on the agreement to be that of Sharbat. All of MBA's attempts to obtain the issuance of opinion letters to the stock transfer agent on behalf of Solomon Capital 401 K Trust are found in **Exh. K** and the actual opinion letters dated July 15, 2012 in **Exhibit L**. The heavy e-mail dealings between Sharbat and Seth Shaw, as well as others, regarding the Immunovative-Novo deal are annexed as **Exh M**.

Declarant declares under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: New York, NY
December 3, 2013

_____
MARK BEYCHOCK