UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
UNITED TORAH  EDUCATION              )
& SCHOLARSHIP FUND, INC.,            )
                                     )
            Plaintiff,               )     **13 CIV 3619 (RJS)**
      -against-                      )
                                     )     **DECLARATION OF**
SOLOMON CAPITAL LLC, et al           )     **SIMON SCHWARZ**            )
            Defendants.              )
--------------------------------------------------------X

    I, **SIMON SCHWARZ**, hereby declare, pursuant to 28 U.S.C. 1746, under penalties of perjury, as follows:

    1. I am one of three trustees of the plaintiff, UNITED TORAH EDUCATION & SCHOLARSHIP FUND, INC. ("United Torah"). As such, I am personally familiar with the facts set forth herein, unless otherwise stated therein.

    **A.**    **The Authenticity of Evidentiary Documents Annexed as Exhibits to this Declaration that Are Not in the Public Domain**

    2.    As principal of United Torah, I have first-hand knowledge of any transaction or e-mail communication in which United Torah, United Torah or I or Sharbat participated, directly or through e-mail communications on behalf of Sharbat & Cos to which I was a participant or to which I was copied or blind copied without my knowledge or consent by Sharbat. All such contemporaneous records, agreements and e-mail communications, particularly **Exhibits L, M and P** annexed hereto, are true and accurate copies of such documents and records made at or about the time of the underlying events. Additionally, such documents are true and accurate copies of records kept by plaintiff in the ordinary course of business.

    3.    In addition, as custodian of United Torah's records and at all relevant times, I also retained copies at United Torah's offices of all agreements, letters, records of transactions,

corporate records, financial records, bank records, e-mails and other communications related to United Torah or any other transactions described below, which were given to me by Sharbat for photocopying and retention, in order to stave off any further threatened collection efforts by United Torah of a debt in excess of $700,000.00 long due. This applies particularly to Exhibits **H, J, K, O and Q**. These were retained as part of the records and files of United Torah maintained by me in the ordinary course of business, on or near the time of the underlying events or occurrences.

4. Exhibits **A-G, I, and R** are all prior sworn statements of Sharbat or of his lawyers in court records, available in the public domain, on the internet, at ECF in the federal court system or NYCEF in the new York State Unified Court System. Finally, **Exhibit N**, are records available on the New York State Department of State entity database, which show the present active or registered New York status of all the entity defendants in this action.

5. As will be shown herein, the statements made by Sharbat in his skimpy unsupported Declaration in support of defendants' motion to dismiss for lack of diversity jurisdiction, the source of plaintiff's claim to federal subject matter jurisdiction in this case, that (1) he moved to Israel in August 2010, when he claims to have "totally and permanently moved his life to Israel," and not in January 2010 when he absconded from New York in an emergency fashion to avoid any criminal investigation or prosecution in the erupting Sponge Tech stock scandal that he had apparently been heavily involved in[1], (2) that "He would pay taxes in Israel were he not exempt until 2020 as a new immigrant;" (3) that "His only active bank accounts are in Israel;" and (4) that "He has no longer any ties to the United States (other than business contacts)," when he claims to have "totally and permanently moved his life to Israel" are belied

---

[1] See declarations of Michael Caridi, Jason Gold and Mark Beychock submitted herewith in opposition to defendants' motion to dismiss.

by prior sworn statements he made, or statements made by his attorneys on his behalf, in court filed documents made in the Southern District of New York in *Hartstein v. Sharbat*, et al. 09 Civ. 9799 (RMB) (the "Hartstein Action"), in *Sharbat v. Butler & MSB Group Inc.*, 10 CV6455 (SAS) (the "Butler Action") and in New York State Supreme Court in *Sharbat et al v. Wolk*, Index No. 600151/08 (the "Wolk Action"). They are also belied by prior statements made to Michael Caridi, Jason Gold and Mark Beychock and in transactional records annexed to the declarations of these respective individuals (annexed as Exhibits thereto), all of which are submitted as part of plaintiff's opposition papers.

### A. Sharbat's Prior Statements in the Hartstein Action

6. In the Hartstein Action, in which Attorney Ronald Nimkoff represented Sharbat and several of his other entities (*see* **Exhibit C** hereto), Sharbat, in order to get an attachment against him vacated, stated under oath, in words directly in contrast to those to which he affirms under oath here, that, among other things, "I am now and have always been a resident and domiciliary of the State of New York and I do not plan on re-locating to another state much less another country." *See* the affidavit of Solomon Sharbat sworn to on **December 15, 2009**, only about one month before he actually moved to Israel, in support of his application to vacate the default judgment (*see* **Exh. O**) that was entered against him in that action (**Exhibit R** hereto)[2]. In the pars. cited, Sharbat stated:

> 2. ………..I am aware that the ex parte order of attachment is predicated on Hartstein's representation that I moved to Israel and that I "do not intend to return to the United States" See Hartstein Aff. (Ex. B hereto) at 9[ 6 and the ex parte order of attachment (Ex. A hereto) at 2, which states that it is predicated on "it appearing that the defendant Solomon Sharbat has fled the jurisdiction and does not intend to return to the United States."
> 3. However, contrary to what Hartstein represented to the state court on an ex parte basis and as explained in further detail below, while I recently visited

---

[2] See Affidavit of Sharbat's Attorney Nimkoff, pars. 46- 52 for more details (**Exh. C** hereto).

Israel and family I have there, I never intended to stay in Israel and I returned home to New York more than one month ago. Simply stated, I am now and have always been a resident and domiciliary of the State of New York and I do not plan on re-locating to another state much less another country. My home is in Queens (67-34 Kessel Street, Forest Hills) where I was born and raised. I attended Queens College in the State of New York. I have had offices in midtown Manhattan for years from which I operate all my businesses and companies. In fact, just this past August, I signed a lease on behalf of my company, Solomon Capital Advisors LLC, to rent office space at 654 Madison Avenue through July 2011. A copy of that lease is attached as Exhibit D. I have been in that space for more than five years. My company, Solomon Capital, LLC [footnote-- I am the owner and President of Solomon Capital LLC.] a New York limited liability company (and named Defendant) also operates out of, and maintains its address at, 654 Madison Avenue.

4.   Thus, any notion that 1 have fled the jurisdiction or plan to do so is preposterous as I am a native New Yorker with both roots and future plans here. Nevertheless, based upon the unsubstantiated allegation that "I have fled the jurisdiction" hundreds of thousands of dollars belonging to Defendants have been restrained, paralyzing both me and my businesses financially and otherwise. In fact, Hartstein has actually restrained approximately $1 million of Defendants' money and securities although he is not even seeking half of that amount through this action.

5.   As stated, I reside at 67-34 Kessel Street in Forest Hills. I have resided at that address for 35 years.6 While Hartstein claims that I simply picked up and left in October 2009 (see Hartstein Aff.), all sorts of documentation shows otherwise. For instance, my telephone bills, credit card bills and bank statements for the months October, November and December 2009 were all delivered to my home in Forest Hills and were not forwarded elsewhere as I never changed or sought to change my address. Copies of certain of my phone bills, credit card bills and bank statements for these months that bear my Forest Hills address are attached collectively as Exhibit E. A copy of my New York State's driver's license setting forth my Forest Hills address is also attached as Exhibit F. I also own two automobiles that are insured and maintained in the State of New York. Copies of the insurance policies for these vehicles are attached as Exhibit G.

### B.  Sharbat's Prior Statements in the Wolk Action

7.   In an Affidavit affirmed in Tel Aviv, Israel on Feb. 2, 2012, and submitted to the New York State Supreme Court in the Wolk Action (**Exhibit A** hereto), Sharbat states at the cited pars.:

> 9. …………I have reside in Tel Aviv, Israel *for at least two years* and did not reside at the Kessel St. address at any time since. That address is for a house owned by my parents, who also moved to Israel well over two years ago, but have had difficulties in selling it due to a poor sellers' market in the area. No one lives at that house, and it would be obvious to anyone who exercised due diligence in serving legal papers there. Indeed, my mail is reviewed and picked up by a friend, Mr. Michelle, once a month or so, based on his availability.
>
> 10. Regardless of the due diligence issue, the Kessel St. house is without question *not my present "dwelling place*," Because Mr. Michelle was in California for an extended period of time starting in January 2011, I did not receive any mail for several months.
>
> 11. I am advised by counsel that …….the <u>nailing</u> part was not properly done at that address because the statute requires that such nailing be done at my *"dwelling place" which it clearly was not*. Therefore, no "personal service as defined in the CPLR," was ever made upon me pursuant to CPLR § 308, as the method of service specifically directed by the order to show cause. (emphasis added)

8.  This is also confirmed by Michael Michel in his Affidavit dated January 30, 2012

submitted to the state court (**Exhibit B** hereto).

> 3. At some time more than two years ago, Solomon Sharbat ("Solomon") and his retired parents made aliyah, or moved from their home at 67-34 Kessel Street, Forest Hills, NY 11375 to Tel Aviv, Israel to live there on a permanent basis. I have visited him there when I vacationed in Israel. I can categorically state of personal knowledge that since that date, neither Mr. Sharbat, nor his parents have resided or even visited the Forest Hills home, which has been "for sale" on the real estate market ever since that move, and Solomon has not conducted any business in the United States nor maintained any offices here. Neither Solomon, nor his parents, left any belongings at the Kessel St. house that would suffice to live there, and they have no working telephone number there. Solomon's parents, too, have not been there once since their permanent relocation to Israel to live their retirement years there.
>
> 4  Before Mr. Sharbat moved, he asked me at the airport to pick up his mail as often as I could because he had forgotten to notify the post office, and mail or federal express to him in Israel anything that looks interesting and not "junk mail." Accordingly, I have checked his mail on a regular basis since his move and I have sent mail or federal express packages to Mr. Sharbat several times for more than two years.
>
> 5.  Generally, I would try to check Solomon's mail every 1-2 months. Almost all the mail was no important. However, because of my work as an artist

        manager in the entertainment business, I do a lot of traveling to Los Angeles, California and overseas. When I am on the road, the mail would not be checked for a more extended period of time.

    9.    Sharbat now claims that since I drafted his Affidavit as his then substituted attorney, and wrote the motion to vacate which includes statements in passing that he intended to live in Israel permanently, I am now precluded from claiming otherwise. Of course, Sharbat's statements in such Affidavit were made under oath and were drafted based on what he told me, not what I knew to be the facts. I would not submit a knowingly false Affidavit if I had known then what I know now. I simply had no knowledge at the time of the Hartstien action or any specific adverse knowledge of his true intentions of why he moved to Israel. Sharbat cannot keep blaming lawyers for false affidavits he executes under oath-a regular and consistent practice of his.

    10.    Indeed, as his substituted attorney in the Wolk action attempting to vacate a default judgment of over $335,000 against Sharbat personally by his past attorney Ronald Nimkoff (*see* **Exh. O** hereto), there was no need to mention any intent to stay in Israel permanently. That was all Sharbat's desire. As Sharbat's Affidavit quoted above shows, by not residing at his parents' home in Queens, New York in October 2011, at the time Attorney Nimkoff served papers there using the "nail and mail" method allowed by the NY CPLR, that location was clearly not his "dwelling place" as required by the CPLR, and that was all that was necessary to vacate the default judgment.

    11.    Most importantly, both Sharbat and Michelle are clear about his move in or about January 2010, a little more than two and a half years before February 2, 2012-the date of his Affidavit. That is obviously an attempt to create some distance from the contradictory statements

made in the Hartstein case in December 2009-so that Sharbat could claim a change of heart in the interim.

### C. Sharbat's Prior Statements in the Butler Action

12. In the complaint filed in the Butler action on August 29, 2010 (*see* **Exh. D** hereto), and then again in the amended complaint filed on September 15, 2010 (*see* **Exh. E** hereto), Sharbat states that the principal place of business of Solomon Capital LLC is in New York and that Solomon Capital 401 K Trust is a "qualified retirement trust organized under the laws of the State of New York" and that its "principal place of business is New York, New York." *See* **Exh. D**, pars. 4-7. The same facts are repeated in the declaration from his attorney in the Butler case, Scott Fenstermaker, dated April 21, 2011, submitted in support of a motion for a default judgment. *See* **Exh. G** hereto.

13. In a Declaration dated April 16, 2011 states that the Butler case arose from "the purchase of certain securities on behalf of me and my business entities Solomon Capital LLC and Solomon Capital 401 K Trust" in August of 2009 in "my office in New York, New York." Although the declaration is made in Tel Aviv, Israel on April 16, 2011, more than one year after he allegedly moved to Israel, Sharbat makes no mention of the fact that such business entities no longer do any business in New York. *See* **Exh. F** hereto.

14. In point of fact, as demonstrated below and in the declarations of Michael Caridi and Mark Beychock, that is exactly what Solomon Capital LLC and Solomon Capital 401-K Trust still do today, with bank accounts and securities accounts in New York, operating as Sharbat's alter egos and investment vehicles which are the sole or primary sources of his income.

**D. Sharbat, through his Alter Egos Solomon Capital and Solomon Capital 401-K Trust which are Active in New York and Have Bank & Securities Accounts in NY; Sharbat Further Had A Porsche Registered in New York in 2011 & 2012, and still Has an Accountant in New York Who Maintains His Books and Files Tax Returns in NY**

15. **Exh. N** attached hereto is a true and accurate copy of data taken from the New York online database of the Secretary of State. It shows that Solomon Capital LLC and the other entity defendants are still active and registered to do business in New York. Needless to say, they would not pay annual registration fees and remain current if they were not doing business in New York. These companies are the sole source of Sharbat's income from his investment activities. In fact, as the attached declarations of Michael Caridi and Mark Beychock demonstrate, after moving to Israel in or about January 2010, Sharbat continued to explore and do many investment deals in New York and some in California, through Solomon Capital LLC and Solomon Capital 401-K Trust, in the same manner that he conducted his investments in stock of start-up companies prior to his departure to Israel.

16   *See also* **Exh. H**, a letter agreement in the Heartwatch transaction, in which Dr. Laifer sends a letter to Sharbat on September 13, 2011 at his Forest Hills, New York address, apparently, without being told that Sharbat was in Israel (*see also* **Exhibit Q)**.

17   In his declaration in support of the motion to dismiss, Sharbat claims that he has no bank accounts in New York. In fact, to my knowledge, he no longer has any personal accounts in New York since Attorney Nimkoff obtained a default judgment against Sharbat in the sum of $338, 248.78 on October 4, 2011(*see* **Exh. I** hereto), and then seized by retraining notice and sherifff's levy two personal Sharbat bank accounts at TD Bank (*see* **Exh. J** hereto). In fact, Attorney Nimkoff even managed to tie up over $12,000.00 in accounts of Solomon Capital LLC and Solomon Capital 401-K Trust maintained at TD Bank in October 2011(*id.*).

18. Further, as demonstrated in **Exhs. K and L** hereto, at least as of January 2013 and May 2013, respectively, Solomon Capital 401-K Trust still maintained an active bank account at the Bank of America and a securities trading and related cash account at Merill Lynch.

19. In late December 2011, Sharbat send me via e-mail a limited power of attorney to reactivate a TD bank account of Solomon Partners Inc. and asked me to do so over the phone without telling me why. *See Exhibit P* hereto. I declined to do so. The Declaration of Mark Beychock attached hereto, par. 15 and Exh. J thereto, now sheds light on "why."

20. Further, in late 2012, Sharbat offered to sell to me a Porsche he told me was registered in his name that he purchased from Seth Shaw, a business contact, and was parked in the back of his parent's house in Forest Hills, New York. Sharbat sent me a copy of the registration statement and the bill of sale that reflects the above purchase. *See* **Exh. M** hereto. I declined his offer.

21. In addition, I am personally aware of the fact that Sharbat for many years has used an accountant Howard Messing who kept all his books and filed annual tax returns for Sharbat and the other entity defendants, almost always after at least one extension. *See* **Exh. O** hereto, first page. As the balance of **Exhibit O** reflects, at least throughout 2011, Mr. Messing continued as Sharbat's current accountant and advisor. Sharbat, at his Jsraeli address, also received correspondence from the Internal Revenue Service in July 2011 re: filing a W-4 for 2011 estimated tax withholdings. It appears that Sharbat and the entity defendants continue to file tax returns in the United States.

22. Finally, in accordance with this Court's instructions at the pre-motion conference, in the event the Court is not fully satisfied by the declarations and proof submitted by plaintiff that Sharbat's domicile remains New York, plaintiff respectfully requests additional discovery

through a deposition of Sharbat and a hearing to provide live testimony as to the jurisdictional issues raised by defendants in this motion. At the very least, plaintiff's opposition papers raise material issues of fact as to where Sharbat was domiciled at the time this diversity action was filed in May 2013.

WHEREFORE plaintiff respectfully requests that the defendants' motion to dismiss be denied in its entirety, and that if the Court deems it necessary, additional discovery be allowed to plaintiff, particularly a deposition of Solomon Sharbat, followed by a hearing as to the jurisdictional issues raised by defendants in this motion.

Declarant declares under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: New York, NY
December 2, 2013

_____
Simon Schwarz, Esq.